IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DELAWARE AUDUBON SOCIETY, )<br>CENTER FOR FOOD SAFETY, and )<br>PUBLIC EMPLOYEES FOR )<br>ENVIRONMENTAL RESPONSIBILITY )<br>            )<br>    Plaintiffs, )<br>            )<br>    vs. )<br>            )<br>Secretary, United State sDepartment )<br>of the Interior, DALE HALL, )<br>Director of United States Fish )<br>And Wildlife Service, and UNITED )<br>STATES FISH AND WILDLIFE )<br>SERVICE, an administrative agency )<br>of the United States Department of the )<br>Interior, )<br>            )<br>    Defendants. )<br>_____ ) | Case No. _____<br><br>COMPLAINT FOR DECLATORY<br>AND INJUNCTIVE RELIEF |

**COMPLAINT**

Plaintiffs, Delaware Audubon Society, Inc., Center for Food Safety, and Public Employees for Environmental Responsibility and on behalf of themselves and their members, allege as follows:

**NATURE OF ACTION**

1. This action concerns the Defendants' management and operation of the Prime Hook National Wildlife Refuge in Sussex County, Delaware (Prime Hook Refuge). Since at least 1995 and continuing to the present, authorized agents of the United States Fish and Wildlife Service ("FWS"), acting under Defendants' supervision and/or control, have entered into Cooperative Farming Agreements with private parties that allow hundreds of acres of land in the Prime Hook Refuge to be farmed, some with genetically engineered crops ("GE crops"), in

exchange for a fee. Entering into these Cooperative Farming Agreements violates the Administrative Procedure Act ("APA") by (a) allowing economic activity at the Prime Hook Refuge without completing the compatibility determinations required by the National Wildlife Refuge System Administration Act ("NWRSAA"), and (b) engaging in a major federal action, which significantly affects the quality of the environment, is highly controversial and the potentially harmful effects on human health, the environment and wildlife is unknown, without performing the environmental assessment required under the National Environmental Policy Act ("NEPA"). Plaintiffs seek a declaration that Defendants are violating the APA, NWRSAA, and NEPA. Plaintiffs also seek injunctive relief preventing agricultural activity at the Prime Hook Refuge until Defendants complete a compatibility determination for each such use as required by 16 U.S.C. §668dd(d)(1)(A) of NWRSAA and Defendants satisfactorily fulfill their statutory obligations under NEPA by producing an environmental assessment and subsequent Environmental Impact Statement ("EIS") concerning use of GE crops at the Prime Hook Refuge.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (declaratory judgment), and 5 U.S.C. § 702 (APA).

3. Venue in this court is proper under 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) because all or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district, and Defendant Fish and Wildlife Service, having authority over the actions or inactions alleged herein, has offices located in this judicial district.

## III. PARTIES

4. Plaintiff DELAWARE AUDUBON SOCIETY, INC. ("Delaware Audubon") is a chapter of the National Audubon Society. It currently serves over 1500 members in Delaware.

Delaware Audubon participates in programs at the Refuge. Members of Delaware Audubon live near, use, recreate, and/or are keenly interested in the activities at Prime Hook Refuge which directly affect and impact the economic, aesthetic, and/or recreational interests of Delaware Audubon Society, Inc. members.

5. Plaintiff CENTER FOR FOOD SAFETY ("CFS") is a national nonprofit organization, with offices in Washington, DC and San Francisco, CA and with members in nearly every state. CFS addresses the impacts of industrial farming and food production systems on human health, animal welfare, and the environment. CFS seeks to protect human health and the environment by ensuring that genetically engineered products are reviewed in a manner that minimizes any risk of contaminating food supplies and the environment. CFS members live near and visit the Prime Hook Wildlife Refuge. The farming of GE crops injures CFS members by interfering, *inter alia*, with their aesthetic enjoyment of wildlife refuge and its inhabitants. In addition, GE crops injure CFS members' recreational and physical enjoyment of Prime Hook because they increase use of herbicides and promote weediness of certain plants. This results in the use of more environmentally damaging techniques such as excessive use and misuse of glyphosate and other herbicides. As a result, CFS' members are at greater risk of suffering health effects of increased herbicide use. Additionally, cultivation of genetically engineered crops compromises members' enjoyment of the Prime Hook Refuge because the crops pose risks to wildlife and offend those opposed to altering the DNA of natural plants.

6. Plaintiff PEER is a national nonprofit organization, based in Washington, D.C. and has field offices throughout the United States, including the Northeast. Members of PEER retreat to Prime Hook National Wildlife Refuge to partake of its unique birding opportunities and plan to do so again in the future. In addition, PEER members, who are also FWS professionals,

are being harmed by having to engage in practices they believe are detrimental to the Refuge, not in compliance with the Refuge Improvement Act of 1997 and violate NEPA.  Further, staff members at the PEER Refugekeeper Field Office are also being harmed by the failure of FWS to comply with environmental laws and act in accordance with the mission of the National Wildlife Refuge System to conserve and manage land and water, and where appropriate, to provide for the restoration of fish, wildlife and plants within the refuge system.

7. Defendant Secretary of the United States Department of the Interior ("Secretary") is the federal official in whom the NWRSAA vests responsibility for making decisions and promulgating regulations required by the NWRSAA.  Specifically, the Secretary is the official ultimately responsible for management of the Prime Hook Refuge and for compliance with all laws applicable to the Prime Hook Refuge, including the NWRSAA, APA, and NEPA. The Secretary is sued in her official capacity.

8. Defendant DALE HALL is the Director of the FWS.  He is legally responsible for overseeing the activities of FWS, including the actions of FWS agents who enter into Cooperative Farming Agreements at the Prime Hook Refuge.  He is sued in his official capacity.

9. Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the Federal Agency responsible for the regulation of National Wildlife Refuges and charged with the task of ensuring National Wildlife Refuges are in compliance with the regulations and laws that govern them, including NWRSAA and NEPA.

10. Members of the Plaintiff organizations live adjacent to or near, and/or enjoy the uses of the Prime Hook Refuge. The above-described educational, scientific, aesthetic, conservation and recreational interests of the Plaintiff organizations and their members have been, are being and will continue to be adversely affected and irreparably injured by the

Defendants' failure to perform and complete compatibility determinations of agricultural uses of the land in the Prime Hook Refuge and failure to perform an environmental assessment and subsequent EIS for agricultural uses involving GE crops. Therefore, Plaintiff organizations bring this action on behalf of themselves and their members.

## IV.    LEGAL BACKGROUND

*National Wildlife Refuge System Administration Act*

11.    Management of the Prime Hook Refuge is governed by NWRSAA under 16 U.S.C. §668dd(a)(1).  The Secretary and FWS have responsibility for managing the Prime Hook Refuge.

12.    Under §668dd(d)(1)(A) of the NWRSAA "the Secretary is authorized…to permit the use of any area within the System for any purpose…whenever he determines that such uses are compatible with the major purposes for which such areas were established." However, the NWRSAA specifically states: "the Secretary shall not initiate or permit a new use of a refuge or expand, renew or extend an existing use of a refuge, unless the Secretary has determined that the use is a compatible use and that the use is not inconsistent with public safety." 16 U.S.C. §668dd(d)(3)(A)(i).

*NEPA*

13.    NEPA sets forth substantive environmental quality goals for the government and the nation. See 42 U.S.C. §4331.  Under NEPA, every agency of the United States Government must include an environmental assessment and follow up EIS in every "recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment." 43 U.S.C. § 4332(2)(C).

14. In addition, NEPA's implementing regulations, promulgated by the Council on Environmental Quality, provide that an environmental review document must be prepared for all agency actions with potential environmental consequences, especially when those actions are "highly controversial" or "highly uncertain or involve unique or unknown risks." 40 C.F.R. §§ 1501.3 (creation of an environmental assessment pursuant to agency rules), 1501.4 (creation of an environmental impact statement pursuant to agency rules), 1507.2(d) (agency must "study, develop, and describe alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources"); 40 C.F.R. § 1508.27(a); 40 C.F.R. § 1508.27(b)(4)-(7).

15. In addition, NEPA's implementing regulations, 40 C.F.R. §§ 1500-1508.28, provide that:

```
NEPA procedures must ensure that environmental
information is available to public officials and
citizens before decisions are made and before actions
are taken.  The information must be of high quality.
Accurate scientific analysis, expert agency comments,
and public scrutiny are essential to implementing NEPA.
40 C.F.R. § 1500.1(b).
```

***APA***

16. Under the APA, a court may review a final agency action to determine if it was "arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §706. Courts may only review a final agency action, 5 U.S.C. §551, and "agency action" includes a "failure to act." *Id*.

### V. FACTUAL BACKGROUND

17. Since at least 1995, FWS has been leasing acres of land on the Refuge to private parties for farming through annual Cooperative Farming Agreements. In particular, FWS entered into the following cooperative Farming Agreements:

| Dates Farming Allowed under CFA | Fields allowed to be Farmed under CFA | Farmer |
|---|---|---|
| March 15 - Dec. 1, **2005** | 111B,108B,201A,202B, 209,357,350B, 351, 352, 353, 356,201 | **FRED A. BENNETT FARM 24139 Sugar Hill Road Milford, DE 19963** |
| March 15, - Dec. 1, **2005** | 318,322,323,326B,204 ,205 206,207,208,301,333, 338,331 | **J. CARLTON WELLS & SONS RD 3, Box 9 Milton, DE 19968** |
| April 1 - Dec. 15, **2004** | 111B, 108B, 201A, 202B, 209 | **FRED A. BENNETT FARM 24139 Sugar Hill Road Milford, DE 19963** |
| March 15 - Dec. 15, **2004** | 204,205,206,207,208, 301, 333,338,331,318,322, 323, 326B | **J. CARLTON WELLS & SONS RD 3, Box 9 Milton, DE 19968** |
| March 15 - Dec. 15, **2003** | 204,205,206,207,208, 301, 333,338,331,318,322, 323 326B | **J. CARLTON WELLS & SONS RD 3, Box 9 Milton, DE 19968** |
| March 15 - Dec. 15, **2003** | 318,322,323,326B | **JAMES C. WELLS, JR. Wells Farms, Inc. Milford, DE 19963** |
| March 15 - Dec. 15, **2003** | 357 | **OCKLES FARM 17120 Ockels Lane Milton, DE 19968** |
| April 5 - Dec. 15, **2002** | 108B,111B,201A,202B, 209 | **FRED A. BENNETT FARM 24139 Sugar Hill Road Milford, DE 19963** |
| March 15, - Dec. 15, **2002** | 204,205,206,207,208, 301, 331,333,338 | **J. CARLTON WELLS & SONS RD 3, Box 9 Milton, DE 19968** |
| April 5 - Dec. 15, **2002** | 318,322,323,326B | **JAMES C. WELLS, JR. Wells Farms, Inc. Milford, DE 19963** |
| April 5 - Dec. 15, **2002** | 357 | **OCKLES FARM 17120 Ockels Lane Milton, DE 19968** |
| April 5 - Dec. | 108B,111B,201A,202B, | **FRED A. BENNETT FARM** |

| | | |
|---|---|---|
| 1, **2001** | 209 | 24139 Sugar Hill Road<br>Milford, DE 19963 |
| April 5 - Dec. 1, **2001** | 204,205,206,207,208A,301,<br>331,333,338 | **J. CARLTON WELLS & SONS<br>RD 3, Box 9<br>Milton, DE 19968** |
| April 5 - Dec. 1, **2001** | 318,322,323,326B | **JAMES C. WELLS, JR.<br>Wells Farms, Inc.<br>Milford, DE 19963** |
| April 24 - Dec. 31, **2001** | 350B,351,352,353,354,355,<br>356 | **OCKLES FARM<br>17120 Ockels Lane<br>Milton, DE 19968** |
| March 27 - Dec. 31, **2000** | 108B,111A,111B,201,202A,<br>202B,209 | **FRED A. BENNETT FARM<br>24139 Sugar Hill Road<br>Milford, DE 19963** |
| March 27 - Dec. 31, **2000** | 204,205,206,207,208A,301,<br>331,332,333,338,330,334,<br>401,407 | **J. CARLTON WELLS & SONS<br>RD 3, Box 9<br>Milton, DE 19968** |
| March 27 - Dec. 31, **2000** | 318,321,322,323,326B,312,<br>313,314,328 | **JAMES C. WELLS, JR.<br>Wells Farms, Inc.<br>Milford, DE 19963** |
| March 31 - Dec. 31, **1999** | 111B,108B,201,202B,209,<br>111A,202A | **FRED A. BENNETT FARM<br>24139 Sugar Hill Road<br>Milford, DE 19963** |
| March 31 - Dec. 31, **1999** | 204,205,206,207,208A,301,<br>330,331,332,333,334,338,<br>401,407,111B,108B,201,<br>202B,209 | **J. CARLTON WELLS & SONS<br>RD 3, Box 9<br>Milton, DE 19968** |
| March 31 - Dec. 31, **1999** | 312,313,314,318,321,322,<br>323,326B,309,310,327,328 | **JAMES C. WELLS, JR.<br>Wells Farms, Inc.<br>Milford, DE 19963** |
| March 1 - Dec. 31, **1998** | 111B,108B,201,202B,209<br>111A,202A | **FRED A. BENNETT FARM<br>24139 Sugar Hill Road<br>Milford, DE 19963** |
| March 1 - Dec. 31, **1998** | 204,205,206,207,208A,301,<br>330,331,332,333,338,402, | **J. CARLTON WELLS & SONS<br>RD 3, Box 9<br>Milton, DE 19968** |

| | 403,404,405,409,401,407, 111B,108B,201,202B,209, 334 | |
|---|---|---|
| March 1 - Dec. 31, **1998** | 312,313,314,318,321,322, 323,326B,309,310,327,328 | **JAMES C. WELLS, JR. Wells Farms, Inc. Milford, DE 19963** |
| March 1 - Dec. 31, **1997** | 111B,108B,201,202B,209 111A,202A | **FRED A. BENNETT FARM 24139 Sugar Hill Road Milford, DE 19963** |
| March 1 - Dec. 31, **1997** | 204,205,206,207,208A,301, 332,333,338,402,403,404, 405,409,401,407,111B,108B,201,202B,209 | **J. CARLTON WELLS & SONS RD 3, Box 9 Milton, DE 19968** |
| March 1 - Dec. 31, **1997** | 312,313,314,318,321,322, 323,326B,309,310,327,328 | **JAMES C. WELLS, JR. Wells Farms, Inc. Milford, DE 19963** |
| March 1 - Dec. 31, **1997** | 106, 107 | **WALLS ENTERPRISES RD 1, Box 248 Milford, DE 19968** |
| March 1 - Dec. 31, **1996** | 111B,108B,201,202B,209, 111A,202A | **FRED A. BENNETT FARM 24139 Sugar Hill Road Milford, DE 19963** |
| March 1 - Dec. 31, **1996** | 204,205,206,207,208A,301, 332,333,338,402,403,404, 405,409,401,407,111A,108B,201,202B,209 | **J. CARLTON WELLS & SONS RD 3, Box 9 Milton, DE 19968** |
| March 1 - Dec. 31, **1996** | 312,313,314,318,321,322, 323,326B | **JAMES C. WELLS, JR. Wells Farms, Inc. Milford, DE 19963** |
| March 1 - Dec. 31, **1996** | 106, 107 | **WALLS ENTERPRISES RD 1, Box 248 Milford, DE 19968** |
| March 1 - Dec. 31, **1995** | 201,11B,202B,209,108B, 111A,202A | **FRED A. BENNETT FARM 24139 Sugar Hill Road Milford, DE 19963** |
| March 1 - Dec. | 204,205,206,207,208A | **J. CARLTON WELLS & SONS** |

| 31, **1995** | ,301, 332,333,338,402,403, 404, 405,407,409,401,201, 209, 334,339 | **RD 3, Box 9 Milton, DE 19968** |
|---|---|---|
| March 1 - Dec. 31, **1995** | 312,313,314,318,321, 322, 323,326B,327 | **JAMES C. WELLS, JR. Wells Farms, Inc. Milford, DE 19963** |
| March 1 - Dec. 31, **1995** | 106, 107 | **WALLS ENTERPRISES RD 1, Box 248 Milford, DE 19968** |

Many of these Cooperative Farming Agreements allow the use of GE crops. The number of acres leased has varied annually and in 2005 alone, at least 431.6 acres were leased through these agreements.

18. Despite the high number of acres leased, FWS has never provided an environmental assessment or follow up EIS under NEPA for any of these Cooperative Farming Agreements or for the use of GE crops within the Prime Hook Refuge.

19. Farming of acreage within the Prime Hook Refuge is an economic use that is regulated by the NWRSAA and its implementing regulations

20. During 1995-2005, Defendants entered into each of the Cooperative Farming Agreements without making a compatibility determination as required by 16 U.S.C. §668dd(d)(1)(A).

21. In 2002, FWS took approximately 150 acres of land (the 150 Acre Area) previously farmed within the Prime Hook Refuge and did not enter into Cooperative Farming Agreements for those acres during a three year period, allowing instead for the acreage to return to a more natural state. Numerous plants, birds, and wildlife returned to these acres, and provided significant new recreational and aesthetic opportunities to Plaintiffs' members.

22.     In 2005, FWS decided to return the 150 Acre area to agricultural uses, plowing under and destroying plants that had established themselves there and reducing or eliminating the habitat for the birds and wildlife that had come into the 150 Acre Area after 2002.

23.     The FWS made the decision to return the 150 Acre Area to agricultural uses without making a compatibility determination as required by 16 U.S.C. §668dd(d)(1)(A).

24.     Upon information and belief, Defendants have already entered into Cooperative Farming Agreements in 2006, and to allow agricultural use of the 150 Acre Area, without making compatibility determinations for such uses as required by 16 U.S.C. §668dd(d)(1)(A).

25.     The use of GE crops is a highly controversial issue in the scientific community and has many harmful and uncertain consequences to the health and quality of the human environment. For example, GE crops may harm beneficial insects, increase weeds, alter soil ecology, and contaminate non-genetically engineered plants.

26.     GE crops such as Roundup Ready soybeans and corn are dependent on herbicide use. These crops are specifically engineered to withstand the broad application of the herbicide Roundup without harming the plant. Studies have shown that cultivation of herbicide-tolerant GE crops dramatically increases the use of herbicides. Herbicides degrade the soil ecosystem and pollute nearby wetlands, streams, lakes, and rivers.

27.     Use of GE crops may also have a detrimental effect on wildlife. The most common pesticide formula used with GE crops, Roundup, harms and kills amphibians. Some studies also indicate adverse effects of GE crops on birds because the farming system associated with herbicide tolerant GE crops alter the plant and weed communities in farmed areas thus affecting the diets of birds. FWS did not consider these environmental effects prior to allowing GE crop planting.

28. Widespread adoption of Roundup Ready technology in corn and soybeans has led to weeds developing resistance to glyphosate, the active ingredient in Roundup. Delaware was the first state to report a "superweed" resistant to glyphosate. Delaware mares tail (*Conyza Candensis*) developed resistance from the use of Roundup Ready soybeans and corn. These GE crops have been consistently used at the Prime Hook Refuge.

29. The development of resistant weeds compounds the problem of increased herbicide use because farmers respond to control the weeds with more applications of the herbicide or use additional herbicides with relatively greater environmental impacts.

30. FWS is fully aware of the potential risks of using GE crops on the quality of the human environment. "Potential risks of GMC's include gene flow, non-target effects, pest resistance and increased use of certain pesticides." Internal FWS Draft Delegation of Authority and Process for Approving the Use of Genetically Modified Crops on the National Wildlife Refuge System, Risks of GMC's section. Despite these concerns, FWS has repeatedly ignored its legal obligation under NEPA to provide an environmental assessment and follow up EIS.

31. Not only is FWS aware of the potential risks associated with the use of GE crops, it is also a known controversial issue on the Prime Hook Refuge itself. In fact, a Prime Hook Refuge Biologist protested the use of GE crops on the Refuge, stating her professional opinion was that the use of GE crops on the Refuge could not be justified. "Based on my professional, biological opinion and experience with the habitat management practices conducted on this refuge for the past 12 years, I can not condone or justify the use of GMOs …in relation to Prime Hook NWRs' farming program." 1/12/2004 email to Jonathon Schafler, Prime Hook Refuge Manager.

32.     In addition, the use of GE crops on National Wildlife Refuge land is so highly controversial that FWS implemented an entirely separate application and approval process for GE crops use on refuges which banned the use of GE crops all together, except in very limited situations. "**We do not use genetically modified organisms in refuge management unless we determine their use is essential to accomplishing refuge purpose(s) and the Director approves the use**…It has recently come to my attention that some refuges…are using or contemplating the use of GM plant materials on refuge land.  For those of you considering the use of such materials, whether for crops, restoration, or other purposes, you will need to thoroughly research and justify its use over native or non-engineered strains and send the request to the Regional Office (RO)…If, after review by the RO, it is determined that the use of GM materials is essential to accomplishing refuge purposes, the request package will be sent to the Director for approval." 2/21/2003 Memorandum from Anthony D. Leger, Regional Chief, National Wildlife Refuge System, to Refuge Managers.  However, no documentation of proposals from the Prime Hook Refuge to the RO or the Director regarding the use of GE crops has been provided by FWS.  On information and belief, FWS has not followed these internal procedures in connection with the farming and use of GE crops at the Prime Hook Refuge.

33.     Further, farming in general on the Prime Hook Refuge is a highly controversial issue and despite this fact, FWS has repeatedly entered into Cooperative Farming Agreements without provided an environmental assessment and subsequent EIS.  "Within the context of the refuge's current natural habitat conditions, refuge staff is still wrestling with the contribution farming practice contribute to the achievement of refuge's purposes.  While we understand in some instances, farming interferes with the refuge's endangered species management program by interfering with the replacement of lost habitat elements for DFS and other E/T species and

for critical habitat for bird guilds of Service special conservation concerns (like migrant and nesting land bird passerines), we also understand the social concerns surrounding the farming program…As documented in this report, migrating and wintering waterfowl needs, are more than adequately provided for with native vegetation…so the farming program as currently conducted…is not needed to achieve waterfowl purposes." Prime Hook National Wildlife Refuge, Annual Habitat Work Plan-CY 2004.

34. Additionally, the Biological Integrity, Diversity and Environmental Health Policy of the national refuge system states, "…we do not allow refuge uses or management practices that result in the maintenance of non-native plant communities unless we determine there is no feasible alternative for accomplishing refuge purposes." 601 FW 3 Part 3.15C.

35. Despite these policies, the Office of the Director of FWS has intervened and required local Refuge management to continue to allow the planting of GE crops at the Prime Hook Refuge.

36. Even though farming and the use of GE crops on the Refuge is highly controversial, FWS has failed to provide a single environmental assessment or EIS in accordance with NEPA, prior to finalizing any of the Cooperative Farming Agreements.

**FIRST CAUSE OF ACTION**
**THE DEFENDANTS HAVE VIOLATED THE APA BY FAILING TO MAKE A COMPATIBLITY DETERMINATION FOR THE USES OF THE REFUGE**

37. Plaintiffs hereby incorporate by reference paragraphs 1 through 36 as if set forth herein.

38. Defendants violated section 668dd(d)(3)(A)(i) of the NWRSAA, 16 U.S.C. § 668dd(d)(3)(A)(i), and its implementing regulations, by failing to perform compatibility

determinations before entering into each cooperative farming agreement and allowing agricultural activity within the Prime Hook Refuge.

39. The failure to make a compatibility determination prior to entering into each cooperative farming agreement is a final agency decision under 5 U.S.C. §701.

40. Defendants violated section 668dd(d)(3)(A)(i) of the NWRSAA, 16 U.S.C. § 668dd(d)(3)(A)(i), and its implementing regulations, by failing to perform a compatibility determination before allowing the resumption of farming on the 150 Acre Area.

41. The failure to make a compatibility determination prior to allowing resumption of farming on the 150 Acre Area is a final agency decision under 5 U.S.C. §701.

42. Defendants' final agency actions described herein violate Section 706 of the APA, 5 U.S.C. § 706, in that Defendants acted arbitrarily, capriciously, abused their discretion, and failed to act in accordance with the law by failing to perform the compatibility determinations required by NWRSAA before entering into cooperative farming agreements and allowing resumption of farming of the 150 Acre Area.

**SECOND CAUSE OF ACTION**
**THE DEFENDANTS HAVE VIOLATED THE NATIONAL ENVIRONMENTAL POLICY ACT**

43. Plaintiffs hereby incorporate by reference paragraphs 1 through 42 as if set forth herein.

44. FWS performed a major Federal action by leasing hundreds of acres of Prime Hook Refuge land in annual Cooperative Farming Agreements since at least 1995 that also allowed the use of GE crops.

45. Because the leasing of hundreds of acres of Prime Hook Refuge land through Cooperative Farming Agreements that allow the use of GE crops by FWS is a major Federal

action, and farming on the Prime Hook Refuge and the use of GE crops has potential environmental consequences, is highly controversial and has unknown risks, FWS violated Section 4332(2)(C) of NEPA by entering into each Cooperative Farming Agreement and failing to prepare an environmental assessment and subsequent EIS.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that Defendants have violated the NWRSAA by failing to complete a compatibility determination of intended uses for the Prime Hook Refuge;

B. Declare that Defendants have violated the APA by failing to complete a compatibility determination for intended economic uses as required by the NWRSAA;

C. Declare that Defendants have violated NEPA by allowing the cultivation of GE crops within the Prime Hook Refuge without preparing an environmental assessment and subsequent EIS;

D. Issue preliminary and permanent injunctive relief barring Defendants from allowing any farming or economic use at the Refuge until a compatibility determination in compliance with NWRSAA is completed;

E. Issue preliminary and permanent injunctive relief barring Defendants from allowing any cultivation of GE crops at the Prime Hook Refuge until an environmental assessment and EIS in compliance with NEPA is conducted;

F. Award Plaintiffs their costs and reasonable attorneys fees under the Equal Access to Justice Act or other applicable statute; and,

G. Grant Plaintiffs such further relief as this Court deems to be just, proper, and equitable.

Dated this 5th day of April, 2006.

                    Respectfully submitted,

                    DELAWARE AUDUBON SOCIETY, CENTER FOR FOOD SAFETY, and PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY

                    By:_____
                        VIVIAN A HOUGHTON, ESQUIRE

Vivian Houghton, DE Bar #2010
800 West Street
Wilmington, DE 19801
(302) 658-0518

Attorney for Delaware Audubon Society


Will Rostov
Miyoko Sakashita
Joseph Mendelson III
Center for Food Safety
2601 Mission Street, Suite 803
San Francisco, CA 94110
 (415) 826-2770 | fax (415) 826-0507

Attorneys for Center for Food Safety


Richard E. Condit
**PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY**
2000 P Street, NW; Suite 240
Washington, D.C. 20036
Tele: (202) 265.7337

Attorney for Public Employees for Environmental Responsibility

≋JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

06-223

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** Delaware Audubon Society, Center for Food Safety and Public Employees for Environmental Responsibility

**DEFENDANTS** Secretary, U.S. Dept of Interior, Dale Hall, Director of U.S. Fish and Wildlife Service

(b) County of Residence of First Listed Plaintiff: Delaware
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Vivian A. Houghton
800 West St, Wilm De 19801   (302)658-0518

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
16 U.S.C. § 668dd(a)(1)
Brief description of cause: Compliance with Federal Statute

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 4-5-06   SIGNATURE OF ATTORNEY OF RECORD: /s/ Vivian A. Houghton

**FOR OFFICE USE ONLY**
RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 06 - 223

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## NOTICE OF AVAILABILITY OF A
## UNITED STATES MAGISTRATE JUDGE
## TO EXERCISE JURISDICTION

I HEREBY ACKNOWLEDGE RECEIPT OF ___3___ COPIES OF AO FORM 85.

APR 05 2006
(Date forms issued)

Vivian A. Houghton
(Signature of Party or their Representative)

Vivian A. Houghton
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action